UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE DELPHI CONNECTION, LLC,

            Plaintiff,

      v.

ANGELIQUE PARISOT-POTTER,

            Defendant.

          Case No. 2:24-CV-789-KCD-NPM

_____/

## ORDER

Before the Court is Defendant Angelique Parisot-Potter's Motion to Dismiss for Forum Non Conveniens or for Lack of Personal Jurisdiction. (Doc. 40.)[1] Plaintiff The Delphi Connection, LLC has responded in opposition. (Doc. 43.) For the reasons below, Parisot-Potter's motion is **DENIED**.

## I. Background

Parisot-Potter previously served "as the Executive Vice President, Business Integrity, and Group General Counsel" for the Massy Group—a company based in Trinidad and Tobago. (Doc. 40 at 1, 2.) While in that role, she participated in leadership training hosted by Delphi, "an international consulting firm," based in Florida. (*Id*. at 2); (Doc. 38 ¶¶ 5, 13.) That training,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

which was part of Delphi's Executive Program, included three sessions in Florida and one in Trinidad. (Doc. 40 at 2.)

Parisot-Potter was not a fan of Delphi or its Executive Program. (Doc. 38 ¶ 5.) To hear her tell it, Parisot-Potter resigned from Massy because she disagreed with its reliance on Delphi's training. (Doc. 40 at 2.)

Shortly after her resignation, Parisot-Potter published a series of essays on LinkedIn decrying Massy's participation in the program. (Doc. 38 ¶ 9.) They did not initially name Delphi or its principals. Instead, the essays referred only to a mysterious organization known as the "OneWay." The essays portrayed the Executive Program as "a mystical, unscientific cult led by gurus who exerted undue influence over [Massy's] corporate executives," and Delphi's principals as a "seemingly deluded," "cash-intoxicated" couple whose beliefs "have zero place in a corporate setting." (*Id.* ¶¶ 10, 33, 39.) To hammer this second point home, Parisot-Potter told readers that the principals claimed to "control reality" with their minds, talk to the dead, and cure cancer. (*Id.* ¶¶ 11, 30, 48.)

To drive interaction with the essay series, Parisot-Potter linked her essays to social media posts on sites like Instagram, X, and Facebook. (*Id.* ¶¶ 40-41.) The posts contained "cherry-picked sound clips" from the program and AI-generated graphics depicting motifs that were "intended to make Delphi's Executive Program appear outlandish and ridiculous." (*Id.* ¶¶ 40-41, 43.)

2

According to Delphi, Parisot-Potter should not have had those recordings, since Executive Program sessions are confidential. (*Id*. ¶ 27.)

Although Parisot-Potter did not initially name Delphi or its principals, she eventually dropped the pretense, linking several posts to the principals' personal social media and posting an unredacted invoice that contained Delphi's Florida address. (*Id*. ¶¶ 35, 39.)

Delphi sued Parisot-Potter in this district—where it is a citizen, and where it claims at least one surreptitious recording occurred—alleging Parisot-Potter's recordings violated Florida law and that her LinkedIn essays, social media posts, and interviews "contained false and defamatory statements." (*Id*. ¶¶ 13, 16, 17, 20, 28, 29-39, 43-50.) The complaint alleges that "[a]s a direct and proximate result of Parisot-Potter's publications," it "lost 100% of its business in the Caribbean and 80% of its business in Florida[.]" (*Id*. ¶ 87.)

Parisot-Potter believes this case should be in Trinidad—where she is a citizen—because that country has "a more significant relationship to the issues in this case." (Doc. 40 at 1-2.) She has moved to dismiss the complaint under the doctrine of forum non conveniens and Rule 12(b)(2) of the Federal Rules of Civil Procedure. (*See* Doc. 40.)

## II. Legal Standard

Rule 12(b)(2) "governs motions to dismiss for lack of personal jurisdiction." *Lochren v. Horne LLP*, No. 6:21-CV-1640-WWB-LHP, 2022 WL

3

14065521, at *1 (M.D. Fla. May 3, 2022). When faced with a Rule 12(b)(2) motion to dismiss, "[t]he court must undertake a two-step inquiry [to] determin[e] whether it can exercise personal jurisdiction over a nonresident defendant." *Id.* "First, the court must determine whether the forum state's long-arm statute provides a sufficient basis for personal jurisdiction." *Id.* If it does, the court must then "determine whether sufficient minimum contacts exist between the defendant[] and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Id.*

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Curry v. W. Express, Inc.*, No. 7:23-CV-30 (WLS), 2025 WL 919384, at *2 (M.D. Ga. Mar. 26, 2025). To meet this burden, the plaintiff must plead facts, "which, if credited, would suffice to establish jurisdiction over the defendant." *In re Bal Harbour Quarzo, LLC*, 634 B.R. 827, 832 (Bankr. S.D. Fla. 2021).

"If the plaintiff establishes a prima facie case of jurisdiction, the burden shifts to the defendant to challenge [the] allegations by affidavits or other pleadings." *Burgauer v. Premier Tr., Inc.*, No. 5:23-CV-708-PRL, 2024 WL 2978303, at *4 (M.D. Fla. June 13, 2024). At that point, "the burden traditionally shifts back to the plaintiff to produce evidence supporting

jurisdiction." *Ares Def. Sys., Inc. v. Karras*, No. 615CV1107ORL22DAB, 2016 WL 1554127, at *2 (M.D. Fla. Apr. 18, 2016). "However, the burden does not shift when the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.*

If the plaintiff can show jurisdiction, the court may still decline to hear the case under the doctrine of forum non conveniens "if it appears the interests of justice require the case to be tried in another forum." *Popescu v. CMA CGM*, No. 09-20860-CIV, 2009 WL 5606131, at *6 (S.D. Fla. Nov. 5, 2009). "A party seeking dismissal through forum non conveniens must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *MPS Monitor S.R.L. v. Oberon Americas, Inc.*, No. 2:24-CV-00409-JLB-KCD, 2025 WL 808247, at *3 (M.D. Fla. Mar. 13, 2025).

### III. Discussion

#### A. Motion to Dismiss Under Rule 12(b)(2)

Parisot-Potter claims Delphi cannot satisfy either prong of the Rule 12(b)(2) analysis. As mentioned, the first asks "whether [Florida]'s long-arm statute provides a sufficient basis for personal jurisdiction." *Lochren*, 2022 WL 14065521, at *1. While the statute "provides for both specific and general

jurisdiction," *Anderson v. Talentsy, Inc.*, 599 F. Supp. 3d 1207, 1213 (M.D. Fla. 2022), Delphi limits its argument to the former (Doc. 38 ¶¶ 16-17).

Delphi contends that Parisot-Potter is subject to the Court's specific personal jurisdiction because she committed six torts. (*See id.* ¶¶ 16-17 (citing Fla. Stat. § 48.193(1)(a)(2).) Personal jurisdiction is available under Florida's long-arm statute if the defendant "[c]ommited a tortious act within this state." *Williams v. 3RD Home Ltd.*, No. 8:20-CV-1647-CEH-JSS, 2021 WL 825047, at *3, *5 (M.D. Fla. Mar. 4, 2021).

Parisot-Potter does not contest that Delphi's claims sound in tort. What's more, she appears to concede that they are all intentional. (*See* Doc. 40 at 19) ("In intentional tort cases such as this...."). But she does argue that the alleged torts lie beyond Florida's long-arm reach.

Starting with Count I, which alleges she recorded Executive Program sessions in violation of the Florida Security of Communications Act, Parisot-Potter contends that it is "unclear from the face of the Second Amended Complaint whether [she] recorded Executive Program sessions in Florida or Trinidad, and it is equally unclear whether these sound clips came from Florida sessions." (Doc. 40 at 16.) That's not true. Delphi repeatedly alleges that Parisot-Potter "recorded [its] Executive Program [sessions] while physically present in Florida[.]" (Doc. 38 ¶¶ 16, 20, 28, 55.) At this stage, "[t]he court accepts the facts alleged in the complaint as true to the extent they are

6

uncontroverted by defendant's affidavits." *A.D. v. Best W. Int'l, Inc.*, No. 2:22-CV-651-JES-NPM, 2023 WL 2955712, at *3 (M.D. Fla. Apr. 14, 2023). Although Parisot-Potter filed an affidavit in support of her motion to dismiss, she did not deny, let alone refute, the allegation that she recorded proceedings in Florida. (*See* Doc. 22.) The Court is therefore satisfied that Florida's long-arm statute can reach Delphi's claim under the Florida Security of Communications Act.

For Counts II through V, which allege she defamed Delphi in her essays, social media posts, and interviews, Parisot-Potter contends that those statements lie beyond the long-arm statute because they "were made while she was located in Trinidad." (Doc. 40 at 17.) But Parisot-Potter's location is not dispositive. Florida's long-arm statute can reach a person who makes defamatory statements from even a faraway place when those statements target a citizen of this state and are published online, where they are accessible to, and viewed by, Floridians. *See Jastrjembskaia v. inCruises, LLC*, No. 23-12601, 2024 WL 5244786, at *6 (11th Cir. Dec. 30, 2024); *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010). The allegations in the operative complaint check each of those boxes. (*See* Doc. 38 ¶¶ 17, 18, 20, 29-38, 44-49, 61-82.) Florida's long-arm statute can therefore reach Delphi's defamation claims. *See Marshall*, 39 So. 3d at 1203.

That leaves Count VI, which alleges Parisot-Potter intentionally interfered with Delphi's business relationships. Parisot-Potter does not address whether Florida's long-arm statute can reach this claim (*see* Doc. 40 at 14-15), but the Court is satisfied that it does. "[T]he elements of intentional interference with an advantageous business relationship are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) intentional and unjustified interference with the contract; (4) by a third party; and (5) damages caused by the interference." *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1098-99 (Fla. Dist. Ct. App. 1999). The allegations in the complaint account for each of these elements. (*See* Doc. 38 ¶¶ 83-87.) Like Delphi's defamation claims, Parisot-Potter's location is not dispositive, so long as her actions caused harm in this state. *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1331 (S.D. Fla. 2010). That's what has been alleged. (*See* Doc. 38 ¶¶ 86-87.) As a result, Florida's long-arm statute can reach Parisot-Potter and the intentional interference claim. *See Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1331.

With that, the Court turns to the second step of the Rule 12(b)(2) analysis: whether Parisot-Potter has sufficient minimum contacts with this state, "to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Lochren*, 2022 WL 14065521, at *1. To make this determination, we apply the three-part test outlined in *Louis Vuitton Malletier, S.A. v. Mosseri*, "which examines: (1)

8

whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed [her]self of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." 736 F.3d 1339, 1355 (11th Cir. 2013). "The plaintiff bears the burden of establishing the first two prongs." *Wood v. Netflix, Inc.*, No. 8:22-CV-2431-CEH-AAS, 2025 WL 918078, at *17 (M.D. Fla. Mar. 26, 2025). If they do, "[the] defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id*.

The first factor—whether Delphi's claims "arise out of or relate to at least one of" Parisot-Potter's contacts with this state—focuses "on [her] contact with the state itself, not [her] contact with people who reside in the state." *Dunkel v. Hedman*, No. 3:15-CV-948-J-34PDB, 2016 WL 4870502, at *6 (M.D. Fla. Aug. 17, 2016). So "there must be an affiliation between the [state of Florida] and the underlying controversy, principally, [an] activity or an occurrence that takes place in [this state] and is therefore subject to the State's regulation." *A.D.*, 2023 WL 2955712, at *3.

Delphi has satisfied this burden. Beginning with Count I, Delphi claims Parisot-Potter recorded Executive Program sessions in Miami and Bonita

Springs in violation of the Florida Security of Communications Act. (Doc. 38 ¶¶ 16, 20, 24, 28, 55.) A tort, committed by a foreign defendant, physically present in this state during its commission, necessarily "arises out of or relates to" their contacts with the state. Parisot-Potter's "conclusory denials of the allegations—especially provided in a motion and not an affidavit—are insufficient to avoid personal jurisdiction" on this claim. *Paris v. Levinson*, No. 819CV00423T02SPF, 2019 WL 2995957, at *4 (M.D. Fla. July 9, 2019).

Moving on to Counts II through V, Delphi claims Parisot-Potter "published false and defamatory statements about [it], a Florida business, on LinkedIn and other social media websites," which were accessible to, and viewed by, third parties in Florida. (Doc. 38 ¶¶ 17, 18, 29-39, 61-82.) According to Delphi, the LinkedIn essays misrepresented the Miami and Bonita Springs Executive Program sessions, where Parisot-Potter was present. (*Id.* ¶ 29.) Those misleading essays were later linked to social media posts that included deceptively edited sound clips from the Florida sessions. (*Id.* ¶¶ 28, 41.) Parisot-Potter then "repeated and expanded on her defamatory statements about Delphi's practices" and her experience attending the Executive Program sessions in interviews published online and accessible in Florida. (*See id.* ¶¶ 46-49.)

Even if Parisot-Potter's contacts with Florida were not the "but for" cause of her defamatory statements, they certainly relate to Delphi's claims, since

they discuss her experience at sessions held *in Florida* and target a citizen of this state. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (noting that the "relate to" portion of the first factor "contemplates that some relationships will support jurisdiction without a causal showing"); *see also Paris*, 2019 WL 2995957, at *4 ("publication of allegedly defamatory material about Florida residents that [were] accessible in Florida, including statements that were accessed by third parties in Florida," arose out of or related to, the defendants' contacts with the state of Florida). Again, Parisot-Potter's conclusory denials "are insufficient to avoid personal jurisdiction" on this claim. *Id*.

That leaves Count VI. As before, Parisot-Potter does not address Delphi's tortious interference claim. But the Court is satisfied that it too arises from (or relates to) at least one of her contacts with this state, since Parisot-Potter's defamatory statements are the basis for this claim. (Doc. 38 ¶ 87 ("*As a direct and proximate result of Parisot-Potter's publications*, Delphi lost 100% of its business in the Caribbean and 80% of its business in Florida, including cancellation of the ongoing Massy Executive Program and the already-planned programs of Massy and others." (emphasis added)).) As noted above, Parisot-Potter's contacts with Florida certainly relate to Delphi's claims, since they discuss her experience at the Executive Program sessions held in this state and target Delphi, a citizen of Florida. The Court is thus satisfied that Delphi's

11

claims "arise out of or relate to at least one of" Parisot-Potter's contacts with this state. *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355.

The Court now turns to the second *Louis Vuitton* factor, which asks whether Parisot-Potter "purposefully availed [her]self of the privilege of conducting activities within [Florida], thus invoking the benefit of [this state's] laws." *Id.* "[A] nonresident defendant's single tortious act can establish purposeful availment," even if they lack other contacts with the forum state, if "the tort: (1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* at 1356.

The intentionality of the alleged torts is not in dispute. (*See* Doc. 40 at 19.) And Parisot-Potter's conduct clearly appears aimed at this state. In this context, "conduct is aimed at the forum state when it is aimed at a resident of th[e] state." *TSM Tech. Mgmt., Inc. v. Benowitz*, No. 6:14-CV-1061-ORL-41, 2015 WL 1311016, at *5 (M.D. Fla. Mar. 24, 2015). In Count I, Delphi alleges Parisot-Potter recorded its communications without consent. (*See* Doc. 38 ¶¶ 6, 55-58.) Parisot-Potter then used those communications to attack Delphi, its principals, and the Executive Program in a series of social media posts. (*See id.* ¶¶ 11, 40-45.) It would thus appear that the unlawful recordings were aimed directly at Delphi, a citizen of this state.

Defamatory statements—such as those alleged in Counts II through V—are aimed at the forum state when "the out-of-state defendant deliberately directs his posting at the plaintiff __*or*__ at an audience in the forum state." *Moore v. Cecil*, 109 F.4th 1352, 1364 (11th Cir. 2024) (emphasis added). Parisot-Potter's defamatory statements did both. They targeted Delphi—a citizen of this state—deriding its Executive Program as "a mystical, unscientific cult led by" a "seemingly deluded," "cash intoxicated" couple whose beliefs "have zero place in a corporate setting." (Doc. 38 ¶¶ 10, 33, 39.) Those statements were then directed at an audience in this state when Parisot-Potter linked several of her posts "to the personal social media page of one [of] Delphi's [principals]" and published an unredacted invoice, which revealed "Delphi's Florida address and showed [it] receiving payment in Florida." (*Id.* ¶¶ 38-39.)

The logic that leads the Court to conclude Counts I through V were aimed at this state also applies to Count VI. According to the complaint, Parisot-Potter knew Delphi was based in this state. (*Id.* ¶¶ 21, 39.) She also knew it had business relationships with companies, both here and abroad, and publicly maligned its reputation to damage those relationships. (*Id.* ¶¶ 86-87.) If true, Parisot-Potter's acts to interfere with Delphi's business relationships were aimed at this state. *See Benowitz*, 2015 WL 1311016, at *5. The Court is thus satisfied that Parisot-Potter's tortious conduct satisfies the second *Louis Vuitton* factor.

13

Finally, Parisot-Potter "caused harm that [she] should have anticipated would be suffered" in Florida. *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356. Parisot-Potter recorded confidential conversations in this state. (*See* Doc. 38 ¶¶ 16, 20, 28, 55.) She then made defamatory statements about Delphi and its principals—citizens of Florida—in posts and articles accessible to, and viewed by, people in this state. (*Id.* ¶¶ 17, 18, 20, 29-38, 44-49, 61-82.) As a result, Delphi suffered damage to its reputation and lost business. (*Id.* ¶¶ 49, 51-53.) That result was not only foreseeable, but it also appears to have been intended. (*Id.* ¶ 39.) The Court is therefore satisfied that Parisot-Potter purposefully availed herself of the privilege of conducting activities in this state, thus invoking the benefit of Florida's laws. *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355.

Since Delphi has established the first two *Louis Vuitton* prongs, the burden shifts to Parisot-Potter to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Wood*, 2025 WL 918078, at *17. Several factors guide the Court's analysis on this point: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1358. Potter does not address these factors. (*See* Doc. 40 at 22-23.) Instead, she devotes a brief

portion of her motion to rehashing the arguments addressed above, primarily, that she is "a citizen of Trinidad who has nothing to do with and no connection to Florida outside of the forced participation in Delphi's Executive Program by her former employer." (*See id.*) The Court will not revisit those arguments, except to say they do not reflect what has been alleged.

Parisot-Potter has not carried her burden. Each claim alleged in the operative complaint is within the reach of Florida's long-arm statute. And she has not shown that the Court would offend traditional notions of fair play and substantial justice by exercising personal jurisdiction. Her motion to dismiss under Rule 12(b)(2) is therefore denied.

## B. Forum Non Conveniens

"Under the doctrine of forum non conveniens, a district court may decline to exercise its jurisdiction when a foreign forum is better suited to adjudicate the dispute." *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019). "The central purpose of forum non conveniens is to ensure that the trial is convenient." *Id.* It "should not be invoked lightly ... because it effectively deprives the plaintiff of [its] favored forum." *Id.* Consequently, the "defendant bears the burden of justifying dismissal" under the doctrine. *Id.* "To satisfy this burden, the defendant must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor

of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Id*.

Because Delphi has conceded Trinidad's adequacy as an alternative forum (Doc. 43 at 16 n.4), the Court need only consider that forum's availability. "An alternative forum is available to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred. Ordinarily, [the requirement of an available forum] will be satisfied when the defendant is amenable to process in the other jurisdiction." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011). Parisot-Potter tells the Court that Trinidad is an available forum because she is a citizen of that country and thus amenable to service there. (Doc. 22 ¶¶ 2, 15). That is enough. *See Tazoe*, 631 F.3d at 1330.

"The second part of the forum non conveniens analysis—the balancing of the private and public factors—is a comparative inquiry [that] requires the district court to weigh the relative advantages and disadvantages of each respective forum." *Fresh Results, LLC*, 921 F.3d at 1049. Before the Court starts weighing factors, however, it must first calibrate the scales by deciding "what degree of deference [to] afford" Delphi's choice of forum. *Saade v. Insel Air*, No. 17-22003-CIV, 2019 WL 2106104, at *4 (S.D. Fla. Mar. 6, 2019). When, as here, "the plaintiff is a United States citizen in a federal forum, and a foreign defendant seeks to dismiss [their] claims under forum non conveniens, the

16

citizen's choice is afforded greater deference." *Wylie v. Island Hotel Co. Ltd.*, 774 F. App'x 574, 578 (11th Cir. 2019). So the scales begin significantly weighted to allow Delphi to proceed in this forum.

That's not to say "dismissal under forum non conveniens is automatically inappropriate." *Id.* But if Parisot-Potter wishes to shift the balance, she "must clearly present positive evidence of unusually extreme circumstances which should thoroughly convince[s] [this] court that a material injustice would be manifest if the case . . . were to remain in th[is] venue." *Wagner v. Island Romance Holidays, Inc.*, 984 F. Supp. 2d 1310, 1317 (S.D. Fla. 2013).

As noted, two kinds of factors are weighed in this analysis: private and public. The private factors "are generally considered more important than the public factors." *Ventura Content, Ltd. v. UGC Internet Ventures, Ltd.*, No. 1:12-CV-2856-TCB, 2013 WL 5312866, at *2 (N.D. Ga. Aug. 13, 2013). They include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Tazoe*, 631 F.3d at 1331. According to Parisot-Potter, the factors concerning access to evidence and witnesses favor dismissal because "[m]ost, if not all, of the evidence and witnesses that [she] will use to refute Delphi's claims are located in Trinidad." (Doc. 40 at 7.) Because that country is not a signatory to the Hague Treaty, Parisot-Potter worries that she may have to defend herself

17

without them if the case remains in this forum. (*Id*. at 8.) Yet she does not identify what evidence or witnesses are in Trinidad. (*See id*. at 7-8.) While she need not submit affidavits identifying these things, her "generalized allegations that [] evidence and witnesses are located in [Trinidad] are not enough to overcome the substantial deference standard that this Court must afford to [Delphi's] choice of forum." *Saade*, 2019 WL 2106104, at *4.

Parisot-Potter raises one more "practical problem" associated with litigating in this Court. As she sees it, "[c]ontinuing the instant action in Florida will prevent [her] from potentially impleading other parties, like Massy, or others that may be responsible for the damages alleged by Delphi." (Doc. 40 at 9.) This perceived problem does not change the outcome for two reasons.

First, Parisot-Potter's reference to other, unidentified parties that she *might* need to *someday* implead *for a presently unknown* reason is not "positive evidence of unusually extreme circumstances" which convinces this Court that a material injustice would occur if she had to litigate in the Middle District of Florida. *See Wagner*, 984 F. Supp. 2d at 1317; *Saade*, 2019 WL 2106104, at *4. Second, Parisot-Potter has failed to show that keeping this case in the Middle District of Florida would result in material injustice if she were to try impleading Massy. As best the Court can tell, Parisot-Potter seems to think Massy is responsible for some of Delphi's damages arising from the tortious

18

interference claim. The Court struggles to see how that could be, since Massy cannot tortiously interfere with its own business relationships. *See Williams Elec. Co. v. Honeywell, Inc.*, 772 F. Supp. 1225, 1236 (N.D. Fla. 1991). The Court is similarly confused as to how Massy is implicated by Delphi's other claims. In any case, and more to the point, Parisot-Potter has not shown that she would be unable to implead Massy if the case were to remain here; she simply asserts the point. As a result, Parisot-Potter has not "clearly presented" this Court with "positive evidence of unusually extreme circumstances" that warrant dismissal.

At bottom, Parisot-Potter doesn't appear to have given any real thought to the private factors that the Court must consider. "Generalized allegations" that she may need to implead Trinidadian citizens for some currently unidentified reason do not overcome "the substantial deference standard that this Court must afford to [Delphi's] choice of forum." *Saade*, 2019 WL 2106104, at *4.

With the scales still tipped heavily in Delphi's favor, the Court turns to the public factors. *See Ventura Content, Ltd.*, 2013 WL 5312866, at *2. They include:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of

> unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Tazoe*, 631 F.3d at 1333.

Parisot-Potter claims these factors favor dismissal for two reasons. First, she believes this case should be litigated in Trinidad because that country "has a strong interest in resolving disputes arising from relationships between its citizens and businesses." (Doc. 40 at 10.) But this isn't a case about Parisot-Potter's relationship with Massy or her views on its corporate governance—it's about her activities in Florida and the effect her actions, taken both here and abroad, had on a citizen of this state. Because her actions were directed at this state, and the injuries were felt here, the United States and the state of Florida each have strong interests in this Court retaining jurisdiction. *See JTC Skywave Invs. Ltd. v. Mart*, No. 24-12237, 2025 WL 1165922, at *4 (11th Cir. Apr. 22, 2025) ("[A] sovereign has a very strong interest [in resolving the dispute] when its citizens are allegedly victims and the injury occurs on home soil."); *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1104 (11th Cir. 2004) ("[T]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction."); *Grape Stars Int'l, Inc. v. nVentive, Inc.*, No. 20-20634-CIV, 2020 WL 4586123, at *14 (S.D. Fla. Aug. 10, 2020) (recognizing Florida

had a strong interest in resolving a dispute when the plaintiff's principal place of business was located in this state and it had suffered the alleged harm here). This consideration, therefore, favors litigating in Florida.

That leaves Parisot-Potter with one last argument: "unnecessary conflicts of laws and the application of [Trinidadian] law support dismissal." (Doc. 40 at 10.) To this point, she has yet to identify a single factor that shifts the balance of the scales, and they remain heavily weighted in Delphi's favor. Therefore, even if the Court were to find that Trinidadian law governed this dispute, it would not affect the overall balance because "this factor cannot be accorded dispositive weight." *McLane v. Marriott Int'l, Inc.*, 547 F. App'x 950, 959 (11th Cir. 2013).

In the end, the private and public factors favor litigating this case in the Middle District of Florida, and Parisot-Potter has not presented "positive evidence of unusually extreme circumstances" to convince the Court that "material injustice" would result if she had to litigate here. *See Wagner*, 984 F. Supp. 2d at 1317. That ends the Court's analysis. *See Luter v. Scheepswerf Groot-Ammers B.V.*, No. 23-CV-80011-AMC, 2023 WL 5725163, at *5 (S.D. Fla. Aug. 17, 2023).

For these reasons, Defendant Parisot-Potter's Motion to Dismiss for Forum Non Conveniens or for Lack of Personal Jurisdiction (Doc. 40) is **DENIED**.

**ORDERED** in Fort Myers, Florida on September 16, 2025.

Kyle C. Dudek
United States District Judge